## IN THE UNITED STATES DISTRICT COURT FOR THE

## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **BRUCE HAYS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. CIV-21-448-AMG** |
| | ) | |
| **KILOLO KIJAKAZI, Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Bruce Hays ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34 (Doc. 1). The Commissioner has answered the Complaint and filed the Administrative Record ("AR") (Docs. 8, 9), and the parties have fully briefed the issues (Docs. 14, 18).[1] The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Docs. 11, 13). Based on the Court's review of the record and issues presented, the Court **AFFIRMS** the Commissioner's decision.

---

[1] Citations to the parties' briefs refer to the Court's CM/ECF pagination. Citations to the Administrative Record refer to its original pagination.

## I.     The Disability Standard and Standard of Review

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."   42 U.S.C. § 423(d)(3).   A medically determinable impairment must be established by "objective medical evidence" from an "acceptable medical source," such as a licensed physician or a licensed and certified psychologist; whereas the claimant's own "statement of symptoms, a diagnosis, or a medical opinion" is not sufficient to establish the existence of an impairment.  20 C.F.R. § 404.1521; *see* 20 C.F.R. §§ 404.1502(a), 404.1513(a).  A plaintiff is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim.  20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden-shifting process).  To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant suffers from a severe impairment

or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"),[2] whether the impairment prevents the claimant from continuing claimant's past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy.   20 C.F.R.  §  404.1520(a)(4)(i)-(v). Plaintiff bears the "burden of establishing a prima facie case of disability under steps one, two, and four" of the SSA's five-step procedure. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).  If the plaintiff makes this prima facie showing, "the burden shifts to the Commissioner to show the claimant has the [RFC] to perform other work in the national economy in view of [claimant's] age, education, and work experience." *Id*.  "The claimant is entitled to disability benefits only if [Claimant] is not able to perform other work." *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

This Court's review of the Commissioner's final decision is limited "to determin[ing] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence."   *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted).  Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  "It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*,

---

[2] RFC is "the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a).

139 S.Ct. 1148, 1154 (2019) (internal quotation marks and citation omitted). A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.  Procedural History

Plaintiff filed an application for DIB on August 24, 2015, alleging a disability onset date of June 23, 2015. (AR, at 84, 278). The SSA denied the application initially and on reconsideration. (*Id*. at 117-21, 123-25). Then an administrative hearing was held on September 6, 2018. (*Id*. at 43-82). Afterwards, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (*Id*. at 14-42). The Appeals Council subsequently denied Plaintiff's request for review. (*Id*. at 1-6). Thus, the ALJ's decision became the final decision of the Commissioner. *See Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. § 404.981.

Plaintiff filed a complaint in this Court on August 28, 2019. (Doc. 14, at 2). United States District Judge Bernard M. Jones reversed and remanded the case to the SSA for

further administrative proceedings.  (AR, at 2065-66).  Upon remand, a hearing was held

by the ALJ on November 6, 2020.  (*Id*. at 2048-64).  The ALJ issued a decision again

finding that Plaintiff was not disabled.  (*Id*. at 2025-41).  That decision became the final

decision of the Commissioner.  20 C.F.R § 404.984(d).

## III.    The Administrative Decision

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful

activity from the alleged onset date of June 23, 2015, through his date last insured of

December 31, 2017. (AR, at 2027).  At Step Two, the ALJ found that through the date last

insured, Plaintiff had the following severe impairments: "bilateral carpal tunnel syndrome,

status-post January 2017 right release and October 2014 left release; chondromalacia of

the patella; obesity; degenerative disc disease of the cervical and lumbar spine;

degenerative joint disease; and major depressive disorder, recurrent, moderate." (*Id*. at

2028).  At Step Three, the ALJ found that Plaintiff had no impairment or combination of

impairments that met or medically equaled the severity of one of the listed impairments.

(*Id*.)  The ALJ then determined that Plaintiff had the RFC, through the date last insured, to

> perform "light work," as defined in 20 CFR 404.1567(b), but that the
> claimant can only: frequently climb ramps and stairs, balance, stoop, kneel,
> crouch, and crawl; never climb ropes, ladders, and scaffolds; must avoid
> exposure to workplace hazards, such as dangerous moving machinery and
> unprotected heights; occasionally reach, push, and pull overhead with the
> right upper extremity; as to the use of the upper extremities beneath overhead
> level, frequently handle and finger; understand, remember, and carry out
> simple and detailed, but not complex or involved, instructions have no more
> than incidental, superficial work-related type contact with others (general
> public, co-workers, and supervisors), defined as brief, succinct, cursory,
> concise communication relevant to the task being performed.

(*Id.* at 2032).   Then, at Step Four, the ALJ concluded that Plaintiff was unable to perform any of his past relevant work.   (*Id.* at 2039).   At Step Five, however, the ALJ found when "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed" such as housekeeper, production solderer, glass checker/optical goods worker, or electronics worker.   (*Id.* at 2039-40).   Thus, the ALJ found that Plaintiff had not been under a disability at any time from the alleged onset date to the date last insured.   (*Id.* at 2040).

## IV.   Claims Presented for Judicial Review

In this appeal, Plaintiff only takes issue with the ALJ's evaluation of carpal tunnel syndrome in his right hand.   (Doc. 14, at 4-12).   He argues that "a review of the medical evidence – as well as a treating medical opinion … indicates that [Plaintiff] was limited to less than frequent (occasional to none) handling and fingering with his right hand and was therefore disabled during a closed period from at least October 24, 2016, to February 8, 2018.   The ALJ erred by failing to consider this closed period of disability."   (*Id.* at 4).

## V.   Substantial Evidence Supports Both the ALJ's Finding that Plaintiff Did Not Experience Disabling Carpal Tunnel Syndrome in His Right Arm for a Continuous Period of At Least Twelve Months As Well As the RFC.

SSA Rulings expand on the definition of "disabled" found at 42 U.S.C. § 423(d)(1)(A), explaining that

> [t]o be found disabled, an individual must be unable to engage in any substantial gainful activity (SGA) by reason of a medically determinable physical or mental impairment(s) which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at

least 12 months.  In considering "duration," it is the inability to engage in SGA because of the impairment that must last the required 12-month period.

Titles II & XVI: Duration of the Impairment, SSR 82-52, 1982 WL 31376, at *1, (S.S.A. 1982).  The ALJ in this case found that

the objective medical evidence of record does not demonstrate that the claimant experienced severe carpal tunnel syndrome in his right arm for a continuous period of at least twelve months during the period at issue. Accordingly, the undersigned finds that the claimant has not demonstrated that he experienced greater manipulative limitations than described in the residual functional capacity for a continuous period of at least twelve months during the period at issue.  The undersigned further notes that the increased symptoms in the claimant's right arm are specifically accommodated with limitations to overhead manipulative acts . . . .

(AR, at 2034).  The ALJ supported this determination by evaluating the timeline of record evidence regarding Plaintiff's right arm.  (*See id*.)  Plaintiff's alleged onset date of disability was June 23, 2015.  (*Id*. at 2027).  The ALJ noted that less than five months later, on November 13, 2015, "Dr. Birdwell observed bilaterally intact grip strength, as well as normal and effective fine tactile manipulation" and that this exam "did not reveal significant manipulative limitations."  (*Id*. at 2034).  The ALJ then acknowledged that approximately 11 months after this exam, on October 24, 2016, Plaintiff had a nerve conduction study showing "severe demyelinating neuropathy in the right arm."  (*Id*.)  The ALJ did not, however, make a finding that this impairment was "disabling" at this point in time, observing that Plaintiff "conceded that he is ambidextrous."  (*Id*.)  The ALJ observed that approximately three months after the nerve conduction study, on January 19, 2017, Plaintiff had right-sided carpal tunnel release.  (*Id*.)  The ALJ stated that by May 23, 2017 – *i.e*., four months after the release and seven months after the nerve conduction study –

Plaintiff "was tightening lug nuts, although his wrist was painful."  (*Id.*)  Finally, the ALJ observed that a September 10, 2018, nerve conduction study showed Plaintiff's "right arm [was] normal" and "observed no carpal tunnel syndrome in the claimant's right arm.  These findings indicate that the claimant's severe carpal tunnel syndrome in the right arm was relieved by the [January 19, 2017] carpal tunnel release."  (*Id.*)

Thus, even though the ALJ acknowledged that Plaintiff suffered from a right arm impairment by October 2016, he observed that the successful carpal tunnel surgery had restored Plaintiff's manipulative functionality at least by May 23, 2017.  Accordingly, he concluded that there was no continuous 12-month period in which Plaintiff experienced either severe carpal tunnel syndrome or more manipulative limitations than provided in the RFC.  (*Id.*, *see quotation supra*).  The ALJ's analysis of this timeline of evidence, in and of itself, constitutes substantial evidence to support his conclusion and the RFC.[3]  "The ALJ was entitled to resolve [] evidentiary conflicts and did so."  *Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016).  Indeed, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from

---

[3] Plaintiff argues that the ALJ misapplied the 12-month duration rule because his reasoning "seemingly require[d] the entirety of this twelve-month period to take place before [Plaintiff's] date last insured."  (Doc. 14, at 6).  There is nothing in the ALJ's opinion to indicate Plaintiff's suggested reasoning.  Plaintiff's contention is designed to support his argument that his severe carpal tunnel syndrome was a disabling condition from the date of the nerve conduction study on October 24, 2016, until a doctor released him back to work on February 8, 2018, a date after Plaintiff's date last insured of December 31, 2017.  (*Id.* at 7).  But as already explained, there was substantial evidence to support the ALJ's conclusion that any impairment of Plaintiff's right arm had resolved before the date last insured.

being supported by substantial evidence.  [The Court] may not displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal citations and quotation marks omitted).

Plaintiff further attacks the ALJ's RFC for its apparent reliance on Dr. Goldstein's opinion that Plaintiff "could work at the 'light work' level of exertion, subject to frequent handling and fingering," an opinion which the ALJ afforded "great weight." (AR, at 2035). In particular, Plaintiff complains that Dr. Goldstein used the September 2018 nerve conduction study, showing no right-sided carpal tunnel syndrome, to assess functional limitations between June 2015 and December 2017, a period during which Plaintiff did experience right-sided carpal tunnel syndrome. (Doc. 14, at 9-10).   However, the ALJ stated that he relied on Dr. Goldstein's opinion because of "his ability to review the entire medical evidence of record" and because it was consistent with the ALJ's own analysis of the timeline, including the 2018 nerve conduction study – which, as discussed above, the ALJ interpreted to mean that the release surgery had successfully relieved Plaintiff's severe carpal tunnel syndrome in January 2017.  Indeed, the ALJ summarized the support for Dr. Goldstein's opinion to include "the results of Dr. Birdwell's examination and the nerve conduction studies contained in the record, which did not demonstrate that the claimant did not [sic] experience severe carpal tunnel symptoms in his right wrist for a continuous period of at least twelve months during the period at issue." (AR, at 2035).  Thus, the ALJ did not err in relying on Dr. Goldstein's opinion, and it also provides substantial evidence for the ALJ's RFC.

The foregoing analysis obviates Plaintiff's contention that the ALJ erred in failing to consider a "closed period"[4] of disability from October 24, 2016, to February 8, 2018 (a date after the date last insured of December 31, 2017).  (Doc. 14, at 4-12).  The Court notes that Plaintiff was represented by the same counsel at the administrative hearing and in the instant appeal, and counsel did not ask the ALJ to consider a closed period of disability. *See Lykins v. Colvin*, 2015 WL 12915595, at *5 (N.D. Okla. July 13, 2015) (same observation) *aff'd*, 657 F. App'x 726 (10th Cir. 2016). In any event, because substantial evidence supports the ALJ's findings of both non-disability as to Plaintiff's carpal tunnel syndrome as well as the RFC for the period from June 23, 2015, to December 31, 2017, Plaintiff was not entitled to the proposed period of closed disability.  *See Asberry v. Kijakazi*, 2022 WL 1462273, at *10 (W.D. Okla. May 9, 2022) ("Implicit in the ALJ's conclusion that Plaintiff was not disabled during the relevant time period is that Plaintiff was not entitled to a closed period of disability at any time during that same period."); *Herndon v. Colvin*, 2016 WL 756572, at *2 (N.D. Okla. Feb. 26, 2016) (rejecting argument that ALJ failed to consider a closed period when "[t]he finding that Plaintiff was not disabled from October 15, 2012 to August 8, 2014 encompassed Plaintiff's proposed closed period"); *Lykins*, 2015 WL 12915595, at *5 (rejecting argument that ALJ failed to consider a closed period when there was "substantial evidence supporting the ALJ's determination that [plaintiff] was not disabled during this timeframe"); *Lopez v. Colvin*, 2014 WL

---

[4] "In a 'closed period' case, the decision maker determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of his decision." *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999) (internal quotation marks omitted).

1056532, at *7 (D. Colo. Mar. 18, 2014) ("Because I have found no infirmity in the ALJ's determination that plaintiff was not disabled during the relevant time period, this [closed period] argument implodes."); *Gragert v. Colvin*, 2014 WL 1214028, at *4 (D. Colo. Mar. 24, 2014) ("[S]ubstantial evidence supports the ALJ's position that Plaintiff was not disabled for any portion of the ten-year period under consideration, including the [proposed closed] period from 2002-2004.") (citing *Mobley v. Astrue*, 2013 WL 653028, at *2 (S.D. Ga. Feb. 20, 2013) (unpublished) ("[W]here the ALJ's finding that the claimant was not under a disability at any time during the period under consideration is supported by substantial evidence, the ALJ does not err in failing to consider the claimant's eligibility for a closed period of disability within that period") (citing *Jones v. Comm'r of Soc. Sec.*, 181 Fed. Appx. 767, 773 (11th Cir. 2006) (*per curiam*))).

## VI.  Conclusion

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned **AFFIRMS** the decision of the Commissioner for the reasons discussed above.

**SO ORDERED** this 19th day of August, 2022.


AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE